# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARC PIERRE HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01149 (RMC) |
| | ) | |
| UNITED STATES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT REQUESTING INJUNCTIVE AND MANDAMUS RELIEF

Pursuant to Fed. R. Civ. P. 12(b)(3) and (b)(6), the United States, the Bureau of Prisons, U.S. Marshals Service, Department of the Treasury and United States Attorney General Michael Mukasey [1] (Collectively "Defendants"), by and through undersigned counsel, respectfully move this Court to dismiss Plaintiff's complaint.

In support of this motion, Defendants respectfully refer the Court to the accompanying Memorandum of Points and Authorities and attachments thereto, and to the entire record in this case. A proposed Order consistent with the relief sought herein is attached.

February 8, 2008                    Respectfully submitted,


_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

---

[1] Substitutes former Attorney General Alberto Gonzales by operation of law pursuant to Fed. R. Civ. P. 25(d)(1).

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157
(202) 514-8780 (facsimile)

Ann H. Zgrodnik
Senior Counsel
Litigation Branch
Office of General Counsel
Bureau of Prisons

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| **MARC PIERRE HALL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:07-cv-01149 (RMC)** |
| ) | |
| **UNITED STATES, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT
FOR INJUNCTIVE AND MANDAMUS RELIEF**

Pursuant to Fed. R. Civ. P. 12(b)(3) and (b)(6), the United States, the Bureau of
Prisons("BOP"), U.S. Marshals Service, Department of the Treasury and United States Attorney
General Michael Mukasey (Collectively "Defendants"),[1] by and through undersigned counsel,
respectfully submit this memorandum of points and authorities in support of their motion.

Marc Pierre Hall, Register Number 11691-058 ("Petitioner"), filed this action as a writ of
mandamus pursuant to 28 U.S.C. 1361 requesting injunctive relief pursuant to Federal Rule of
Civil Procedure 65.  See Petition, p. 1.  Defendants contend that this petition should be denied
and dismissed because it is improperly venued pursuant to 28 U.S.C. 1391; and Petitioner has
failed to exhaust his administrative remedies with regard to all his allegations arising from USPs
Allenwood and Victorville and only some of the claims from USPs Marion and Lewisburg have
been exhausted.  Since the only claims Petitioner has exhausted arise from USPs Marion and

---

[1]  Plaintiff has titled the former Attorney General Alberto Gonzales as "U.S. Attorney" in
the case-caption of his complaint.  Current Attorney General, Michael Mukasey substitutes by
operation of law pursuant to Fed. R. Civ. P. 25(d)(1).

Lewisburg and he has since been transferred from those institutions, all of his exhausted claims have been rendered moot.  Finally, Petitioner fails to allege sufficient facts to sustain the equitable relief he seeks.

## FACTUAL BACKGROUND

Petitioner was sentenced in the United States District Court for the Western District of North Carolina on April 23, 1996, to a 480 month term of imprisonment with a five year term of supervised release to follow for Damage of Real Property Affecting Interstate Commerce, violation of 18 U.S.C. 844 (i).  <u>See</u> SENTRY Public Information Inmate Data.  Petitioner was also sentenced to life for Possession of a Firearm, Destructive Device In Relation To Drug Trafficking Crime, violation of 18 U.S.C. §924 (c) (1). <u>Id.</u>  Petitioner is currently incarcerated at the United States Penitentiary (USP) in Victorville, California. <u>Id.</u>  Petitioner was designated to USP Victorville on June 8, 2007. <u>Id.</u>

Since his incarceration in 1997, Petitioner has submitted 600 administrative remedy requests and appeals, including 300 administrative remedy requests and appeals since he was incarcerated at USP Marion, Illinois, on April 19, 2005.  <u>Declaration of Bruce Plumley</u>, ¶5 ("Plumley Decl.").  Of the 300 administrative remedy requests and appeals, 175 were rejected for various technical reasons.  <u>Id.</u>  Although Petitioner alleges various violations at USPs Victorville, Allenwood, Marion and Lewisburg, he only exhausted claims arising from the latter two locations.  <u>Id.</u>  In other words, Petitioner has not exhausted any claims arising from USPs Allenwood and Victorville.  In his initial motion filed on June 27, 2007, Petitioner alleges the following exhausted and unexhausted claims:

**Exhausted Claims**

Petitioner claims that, while he was incarcerated at the USPs Marion and Lewisburg, he was subject to various accounting fraudulent practices like double charging for mail postage, over charging for copies by unit counselor, being over charged for purchases made in the commissary or for other copies. Petition, 1-2; Plumley Decl., ¶7. Petitioner claims that he was repeatedly denied special care clinic for multiple medical issues and adequate mental health screening at USPs Marion and Lewisburg. Petition at 3-4; Plumley Decl., ¶¶ 8, 10. Petitioner claims that, at USPs Marion and Lewisburg, he was repeatedly denied his privacy rights by permitting non-medical staff to be present on telemed conferences while he was fully restrained. Petition at 4; Plumley Decl. ¶9.

Petitioner alleges that his entitlement to grievance processes has been abridged at USP Marion. Petition at 5; Plumley Decl., ¶11. Petitioner claims that BOP places inmates in segregation without mattress, bedding and uses food punitively but he only exhausted this claim as to his treatment at USP Lewisburg. Petition at 6; Plumley Decl. ¶12.

**Unexhausted Claims**

Petitioner makes a litany of claims that he has failed to exhaust. He claims that USP Lewisburg, restricted access to his commissary account in failing to correct the errors. Petition at 2. Petitioner further claims that USP Allenwood followed the same pattern when he was housed there. Id. Petitioner claims that the Central Office appeal process did nothing to correct the fraud or account. At USP Allenwood, he claims that he was denied psychological treatment, testing, and proper evaluations. Petitioner alleges he was repeatedly denied adequate cell delivery service and law library use while incarcerated at USP Lewisburg and USP Allenwood.

3

Petitioner makes the following Eighth Amendment claims against all BOP facilities nationwide: (1) permitting the use of food as punishment without DHO hearing; (2) destroying personal property without compensation; (3) permitting inhumane conditions in winter months by transporting inmates with no coats or sweats; (4) placing inmates in disciplinary cells with no mattresses or clean sheets and secured with transport chains; (5) permitting inhumane cell conditions; and (6) permitting inmates to improperly handle human waste.  Petitioner also claims that the BOP has unconstitutionally caused a delay, obstruction and interference with his mail by failing to afford payment forms and restricts postage from the commissary.

On October 22, 2007, the Court granted Petitioner's Motion to Supplement his original complaint.  There, Petitioner alleges that on August 24, 2007 he was assaulted by staff at USP Victorville while housed in the Special Housing Unit ("SHU").[2]  He claims that the handheld camera was turned off during the assault, and that no adequate security cameras were mounted in the general housing or common area of SHU.  Petitioner requests that the Court order the institution to use handheld cameras as prescribed by policy for use of force.  He further requests that the Court be enjoined from any and all illegal unnecessary use of force, and that the SHU be adequately equipped with more security cameras.

Petitioner alleges that he is suffering from several medical deprivations, to include a bulging hernia, which is causing pain.  Petitioner further alleges that he has been  suffering from

---

[2]  The Special Housing Unit is separate unit for inmates who are unable to function in a less restrictive environment without being a threat to others or to the orderly operation of the institution.  BOP Program Statement, 5270.07, Inmate Discipline and Special Housing Units, December 29, 1997.

4

chronic pain, discomfort, dizziness, and blurred vision that accompanies loss of balance and sharp buzzing sounds in his head and other parts of his body for nearly one year.

Petitioner claims that he and other inmates at USP Victorville are being denied timely access to their legal property while housed in the SHU. Petitioner requests that the Court order USP Victorville to release inmate legal property in accordance with BOP policies. Petitioner claims that he is still experiencing a frozen account that began at USP Marion in which staff have committed fraudulent accounting practices that unlawfully encumbered his account. He requests that the Court set an adjusted payment plan. Petitioner claims that the SHU at USP Victorville does not have adequate equipment or cell delivery services in order to obtain copies. He further claims that this institution does not have any personnel who provide legal assistance to the inmates housed in the SHU. Petitioner claims that USP Victorville violated the Fifth and Eighth Amendments by unlawfully requiring that inmates clean their cells prior to attending recreation. He requests that the Court order USP Victorville to implement a policy affording each inmate the right to recreation absent a justifiable penological interest.

Petitioner seeks injunctive and mandamus relief pertaining to his exhausted and unexhausted claims. Regarding the former, Petitioner seeks an order compelling the BOP to provide all "necessary" medical care; enjoining the BOP from enforcing and engaging in fraudulent accounting practices; enjoining the BOP from delaying incoming and outgoing mail. Suppl. Inj., Dkt. No. 28 at 4. Petitioner seeks other mandamus and injunctive relief that is unrelated to his exhausted claim. For example, he seeks an order compelling the BOP to audit all inmate accounts from 2002-present for the past ten (10) years.

## STANDARD OF REVIEW

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the court must construe the factual allegations in the complaint in the light most favorable to plaintiff, but need not accept the legal conclusions or allegations without factual support in the allegations made. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matter of which the court may take judicial notice, and matters of public record. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Under 28 U.S.C. §1391(e) and 1404(a), this action is improperly venued. Here, the facts underlying Petitioner's claims are insufficient to state a claim and also demonstrate that the action is improperly venued.

## ARGUMENT

### A.      This Action Should be Dismissed as Improperly Venued

In any "civil action in which a defendant is an officer or employee of the United States or any agency thereof in his [or her] official capacity or under color of legal authority," venue is proper in one of these three forums: (1) where a defendant in the action resides; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or a substantial part of property that is the subject of the action is situated; or (3) where the petitioner resides if no real property is involved in the action. See 28 U.S.C. §1391(e). Federal law also provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.
>
> 28 U.S.C. §1404(a).

The D.C. Circuit in <u>Starnes v. McGuire</u>, 512 F.2d 918, 926 (D.C. Cir. 1974) (<u>en banc</u>) set out a number of factors for a district court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of Columbia. Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C. <u>Id.</u> at 929-33.

These factors all suggest that venue is improper in this jurisdiction and that this action should instead have been brought in the Central District of California. After all, the petitioner is currently housed at USP Victorville, which is located in that forum. The majority of the alleged events occurred at USP Victorville. None of the alleged events occurred in this jurisdiction. Petitioner is proceeding pro se and so no concern regarding any difficulty communicating with counsel is implicated. Petitioner's medical records and central file are at USP Victorville. Petitioner's claims are individualized and are of no national import. Because venue is improper, this court should dismiss this action and decline to issue a writ of mandamus. Fed. R. Civ. P. 12 (b)(3). In the event that this action survives defendant's dispositive motion, this court could alternatively decide to transfer this case to the Central District of California because the factors articulated in <u>Starnes</u> strongly militate in favor of a transfer to that forum. Under these factors, a transfer of venue, under 28 U.S.C. §1404(a) would be entirely appropriate, and serve the interests of both, preservation of resources and justice.

**B.    Plaintiff Has Failed to Exhaust his Administrative Remedies[3]**

Petitioner has failed to exhaust his administrative remedies with regard to some of the claims raised in his petition.  The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available and exhausted."  See 42 U.S.C. §1997e(a).  In Booth v. Churner, 531 U.S. 731, 740-741 & n.6 (2001), a unanimous Supreme Court held that Congress mandated completion of any prison administrative remedy process capable fo addressing the inmate's complaint and providing some form of relief, "irrespective of the forms of relief sought and offered though administrative avenues."  See also Jackson v. District of Columbia, 254 F.3d 261, 270-271 (D.C. Cir. 2001); Smith v. Zachary, 255 F.3d 446, 451 (7th Cir. 2001).  In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court reiterated that " . . . exhaustion in cases covered by §1997e(a) is . . . mandatory . . ." Id.  In Porter, the Supreme Court also explained the rationale underlying the PLRA's exhaustion requirement:

> Beyond doubt, Congress enacted §1997e(a) to
> reduce the quantity and improve the quality of
> prisoner suites; to this purpose, Congress afforded
> corrections officials time and opportunity to address
> complaints internally before allowing the initiation
> of a federal case.  In some instances, corrective
> action taken in response to an inmate's grievance

---

[3]  The only claims that Petitioner has exhausted arose from his incarceration at USPs Marion and Lewisburg.  Since then he has been transferred to USP Allenwood and he is now incarcerated at USP Victorville.  A prisoner's transfer from a prison moots any claim he might have for equitable relief arising out of conditions of confinement in that prison.  Scott v. Smith, 139 F.3d 940, 941 (D.C. Cir. 1998)(citing Cameron v. Thornburgh, 983 F.2d 253, 257 (D.C. Cir. 1993)).  Under this Circuit's clear jurisprudence, this petitioner should be dismissed because all Petitioner's exhausted claims have been mooted by his transfer to USP Victorville.

> might improve prison administration and satisfy the
> inmate, thereby obviating the need for litigation.  In
> other instances, the internal review might filter out
> some frivolous claims.  And for cases ultimately
> brought to court, adjudication could be facilitated by
> an administrative record that clarifies the contours
> of the controversy.

534 U.S. at 524-525.

In 2006, the Supreme Court again reiterated that in the PLRA context, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." See Woodford v. Ngo, 548 U.S. 81, 84(2006).

Here, the three-level administrative remedy process used in the federal prison system and applicable to this matter is nearly identical to that at issue in Booth. Compare Booth, 532 U.S. at 734 with 28 C.F.R. §542.10 et seq. The BOP's regulations require inmates first to attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team. See 28 C.F.R. §542.13.  If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within 20 days of the date on which the basis of the complaint occurred. 28 C.F.R. §542.14.  If the inmate is not satisfied with the Warden's response, he may appeal the response to the Regional Director within 20 days of the Warden's decision. 28 C.F.R. §542.15.  If the inmate is dissatisfied with the regional response, the prisoner may then file a national appeal with the Office of General Counsel in Washington, D.C., within 30 days of the date of the Regional Director's decision. See 28 C.F.R. §542.15. Appeal to the Office of General Counsel is the final administrative appeal in the BOP.

In the instant case, petitioner has only exhausted his administrative remedies with respect to the following issues addressed in his petition: USP Marion staff impinging his access to the

9

courts by not providing him with postage; USP Marion staff subjecting him to numerous fraudulent accounting practices by double charging for postage, overcharging for copies, and encumbering his Trust Fund Account; denied medical care and treatment while incarcerated at USP Marion and USP Lewisburg; denied his right to privacy concerning his physical health concerns, mental state, and mental health issues while at USP Marion and USP Lewisburg; psychology staff at USP Lewisburg failed to conduct a proper intake screening, falsified records, and failed to obtain a diagnosis of his mental illness from the Connecticut Department of Corrections; USP Lewisburg staff violated his rights by confining him in the Special Housing Unit with ambulatory restraints and without a mattress or bedding; USP Lewisburg staff withheld food as punishment when he was confined in the Special Housing Unit.

Under <u>Booth</u>, <u>Porter</u>, and <u>Woodford</u>, inmates are bound to complete proper exhaustion. Petitioner has failed to exhaust all remaining issues addressed in his complaint. Accordingly, those claims he has not exhausted must be dismissed for failure to exhaust administrative remedies under the PLRA and implementing regulations.

### C.     Plaintiff Fails to State a Claim Upon which Relief Can be Granted

1.     <u>PLAINTIFF IS NOT ENTITLED TO MANDAMUS RELIEF</u>

Courts have generally recognized that mandamus relief is extraordinary. <u>Muhammad v. United States Bureau of Prisons,</u> 789 F.Supp. 449 (D.D.C. 1992). Thus, the remedy of mandamus can only be invoked in drastic situations. <u>Will v. U.S.,</u> 88 S.Ct. 269 (1967). In determining whether the writ of mandamus is an appropriate relief, courts have looked at three criteria. First, the petitioner must have a clear right to the relief sought; second, the defendant must have a clear duty to act; and third, there must not exist other adequate relief available to the

petitioner.  Muhammad v. United States Bureau of Prisons, 789 F.Supp. 449 (D.D.C. 1992).

      a.  Petitioner Has No Clear Right to the Relief he Seeks.

          1.  Medical Care and Mental Health Care

Petitioner alleges that the BOP has repeatedly denied him the right to be seen in the

special care clinic for multiple medical issues while he was incarcerated at USP Marion and USP

Lewisburg.  See Petition at 3-4.   He also claims he was denied psychological treatment, testing,

and evaluations while incarcerated at USP Allenwood.  Id. at pp. 4-5.  He further claims that he

has been denied requested surgery for a hernia and requested MRI's.  See Supplement Injunction.

Petitioner requests that the court order provide him with all necessary medical care.  Id.

Petitioner does not have a right, under the Constitution's Eighth Amendment, to the

special medical treatment he seeks.  It is true that inmates have a constitutional right to receive

"adequate" medical treatment. See, e.g., Farmer v. Brennan, 511 U.S. 825 (1994) (observing that

under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food,

clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of

the inmates'") (internal citations omitted); Estelle v. Gamble, 429 U.S. 97 (1976).  However, a

prisoner's Eighth Amendment right to medical treatment is quite limited in scope.  The Supreme

Court has indicated that a "deliberate indifference" standard should be applied to in the context

of Eighth Amendment challenges to prison-provided medical care. See Estelle, 429 U.S. at 104-

105 ("deliberate indifference to serious medical needs of prisoners constitutes the unnecessary

and wanton infliction of pain . . . proscribed by the Eighth Amendment," whether it takes the

form of "indifference . . . manifested by prison doctors in their response to the prisoner's needs or

by prison guards in intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed") (footnotes and internal quotation marks omitted); Farmer 511 U.S. at 839 (indicating that a "subjective recklessness as used in the criminal law" is an appropriate definition of "deliberate indifference under the Eighth Amendment).

In Farmer, the Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See id. At 837 (emphasis added).  More than mere negligence is required to support a claim of cruel and unusual punishment. See Estelle, 429 U.S. at 106 (explaining that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment" and that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); see also Arnold v. Moore, 980 F. Supp. 28, 34 (D.D.C. 1997); Fitzgerald v. Corr. Corp. Of America, 403 F.3d 1134, 1143 (10th Cir. 2005) (same); Perkins v. Kan. Dept. Corr., 165 F.3d 803, 811 (10th Cir. 1999) (disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of deliberate indifference necessary to violate the Eighth Amendment); Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) (inadvertent or negligent failure to provide medical care, however serious the consequences, does not rise to deliberate indifference to serious medical needs" and is not a constitutional violation); See Bowling v. Ridley, 1992 W.L. 23651, *1 (D.D.C. 1992) (noting that "[e]ven conduct representing medical malpractice, which has not been alleged here, does not in itself create constitutional liability").

Thus, "[i]t is obduracy and wantoness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clauses, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." See Whitley v. Albers, 475 U.S. 312, 319 (1986); Wilson v. Seiter, 501 U.S. 294, 299 (1991). "Once medical care has been provided, petitioner must allege conduct outside the norms of professional conduct to establish a constitutional violation." See Bowling, 1992 W.L. at *1.

In this case, even if petitioner's allegations were true, they do not suggest negligence, much less rise to the level of a constitutional violation. Despite petitioner's assertions, petitioner has presented no medical opinion even suggesting that BOP staff acted negligently in any of those matters. Instead, he appears to have made his own independent judgment about the quality of care he is receiving from BOP medical staff. Many of Petitioner's claims regarding lack of medical care arise out of his incarceration at USPs Allenwood and Victorville. Again, Petitioner has not exhausted any of these claims.

Courts have demonstrated little tolerance for such unsubstantiated challenges to, and second guessing by, inmates of the course of medical treatment they are receiving. See Bowling, 1992 W.L. at *1 ("a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis and treatment which the inmate receives does not support a claim of cruel or unusual punishment.") (citing Ramos, 639 F.2d at 575); Hartwell v. United States, 353 F. Supp. 354, 361, n. 23 (D.D.C. 1972) ("The prisoner cannot be the ultimate judge of what medical treatment is necessary or proper for his care.") They have rejected Eighth Amendment claims concerning medication claims under much more extreme circumstances than those alleged here.

13

See, e.g., Estelle, 429 U.S. 97 (1976) (finding that no Eighth Amendment claim was stated where, prison officials, inter alia, inadvertently failed to fill prisoner's prescription for blood pressure medication for four days); Glover v. Ridley, 1994 W.L. 35849, *5 (D.D.C. 1994) (failure to provide the drug AZT on one occasion "clearly fail[s] to meet the deliberate indifference standard"); Cox v. District of Columbia, 834 F. Supp. 439 (D.D.C. 1992) (two-week delay in providing medication to prisoner insufficient to state Eighth Amendment claim; Bryan v. Administrative of F.C.I. Otisville, 897 F. Supp. 134 (S.D.N.Y. 1995) (objective prong not met where prisoner was deprived of medicine for three days, causing fever and mouth infection).

As such, petitioner's allegations regarding the medical and mental health treatment he has received should be dismissed for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Nor can these claims justify a writ of mandamus in this action.

### 2. Petitioner's SHU Claims

Petitioner makes the following Eighth Amendment claims regarding the conditions in SHU. First, petitioner alleges that at numerous BOP facilities inmates are placed in disciplinary cells with no mattresses or clean sheets and secured with transport chains instead of soft restraints. See Petition, at 6. Second, he alleges that at USP Allenwood the BOP permits inhumane cell conditions filled with human waste and the inmates improperly handle human waste. Id. Third, petitioner alleges that he was denied adequate cell delivery service of legal books and copies while in SHU. Id. Fourth, he alleges that he was required to clean cells prior to recreation. Id. Fifth, petitioner claims he was denied timely access to his legal property in SHU. Id. Sixth, petitioner claims that the SHU at USP Victorville should be equipped with more security cameras. Id.

14

Even if Petitioner's allegations respecting the SHU are accepted by this Court for the purposes of this motion, this Court should not grant Mandamus relief to petitioner based on any of these allegations because petitioner is no longer in SHU at this time. See Inmate History Quarters. Indeed, petitioner was released from the Special Housing Unit at USP Victorville on October 9, 2007. Thus, all of petitioner's claims which concern SHU conditions are now moot and petitioner lacks standing to challenge the conditions in the SHU. See, e.g., Lewis v. Stempson, 737 F. Supp. 667 (D.D.C. 1990) (finding that "[t]he relief which petitioner seeks, to be transferred from cell block three, has been provided to petitioner and accordingly his claim is moot"); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding that prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit).

Even if petitioner's claims were accurate, none of petitioner's claims regarding conditions in the SHU would rise to the level of "extreme depravation" required to make out an Eighth Amendment violation. See, e.g., Sandin v. Conner, 515 U.S. 472, 485 (1995) (observing that; "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system'" and that [d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law") (internal citation omitted); Whitley, 475 U.S. 312 (1986); Farmer, 511 U.S. 825, 239 (1994); Hudson v. McMillian, 503 U.S. 1, 9 (1992) (noting that "extreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim" and that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations

15

denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (quotations and citations omitted).  Petitioner's Eighth amendment allegations regarding the SHU are exactly the sort of claims which courts have rejected in the past. See, e.g., Cunningham v. Eyman, 2001 W.L. 939091, *3 (7th Cir. 2001) (no Eighth Amendment claim stated where shackled prisoner forced to soil self and spent four to five hours in soiled clothing); Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999) (prisoner who was restrained in handcuffs and shackles for 24 hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation); Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (temporary deprivation of toilet paper insufficient to state Eighth Amendment claim).  Thus, Petitioner's SHU related claims should be dismissed as they are moot and fail to state a claim upon which relief can be granted. See Fed R. Civ. P. 12 (b)(6).  Nor can they serve as a basis upon which a writ of mandamus may issue.

3.  Petitioner's Claims that he has been subject to numerous fraudulent practices with his commissary account; staff have caused a delay, obstruction, and interference with his  mail/legal property; staff denied him as well as other inmates to timely access to their legal property

Petitioner has accused BOP staff of delaying, interfering and obstructing with his mail by restricting postage from the commissary and failing to provide payment forms.  Petitioner has not specified which pieces of his mail/legal property were obstructed or provided any real evidence that such tampering ever occurred.  Nor has he pointed to any injury or adverse effect he personally has suffered by the alleged tampering, in the form of a motion denied or an action dismissed.  Bounds v. Smith, 430 U.S. 817 (1977).   In fact, petitioner is a serial filer having filed 56 civil suits in various federal courts. See PACER Case Index Report.  These facts would

16

appear to refute Plaintiff's suggestion that he has been denied access to the courts as a result of the obstruction of his legal mail and to undercut Plaintiff's claims that he has suffered a concrete injury which this court should address with a writ of mandamus.

Given the sheer number of actions in which petitioner is involved, it is not surprising that petitioner would occasionally experience delay and mishaps in the delivery of the large volume of legal mail which is surely associated with all of these actions, despite the best efforts of prison officials and the Postal Department. Such inadvertent delays and mishaps do not rise to the level of a constitutional violation. See Lewis v. Casey, 518 U.S. at 349 ("[i]t is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur."); Crawford-El v. Britton, 951 F.2d 1314, 1318-19 (D.C. Cir. 1991) (finding that the misdelivery of legal mail in prison does not implicate an inmate's constitutional right of access to the courts" unless there is "either an intent to thwart the prisoner's access to courts, or at a minimum deliberate or reckless indifference to a foreseeable disruptive effect"); Ross v. Department of Corrections, 2006 W.L. 3208670, *3 (D.D.C. 2006) (noting that "Plaintiff has not stated that he has been unable to pursue a claim due to interference with his legal mail" and that "[h]e has not alleged the efforts, if any, that he has taken to pursue a claim and how that effort may have been frustrated by jail officials" and concluding that "[a]s a result, this claim will also be dismissed").

The ripeness requirement is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an

17

administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties.'" See National Park Hospitality Ass'n v. Department of Interior, 538 U.S.

803, 807-08 (2003) (internal citations omitted); Ohio Forestry Ass'n, Inc. v. Sierra Club, 523

U.S. 726, 732-22 (1998); Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967); Askins

v. District of Columbia, 877 F.2d 94, 97 (D.C. Cir. 1989).  "Article III of the Constitution

confines the federal courts to adjudicating actual cases and controversies, and this requirement

"defines with respect to the Judicial Branch the idea of separation of powers on which the

Federal Government is founded." See Allen v. Wright, 468 U.S. 737, 750 (1984); Lewis, 518

U.S. at 349 ("[i]t is the role courts to provide relief to claimants . . .  who have suffered, or will

imminently suffer, actual harm; it is not the role of courts, but that of the political branches to

shape the institutions of government in such fashion as to comply with the laws and the

Constitution" and that "the distinction between the two roles would be obliterated if, to invoke

intervention of the courts, no actual or imminent harm were needed, but merely the status of

being subject to a governmental institution that was not organized or managed properly").

    "In order to satisfy the 'irreducible constitutional minimum of standing,' a litigant must

demonstrate that it has suffered a 'concrete and particularized' injury that is: 1) "actual or

imminent," . . . 2) caused by, or fairly traceable to, an act that the litigant challenges in the instant

litigation, . . .: and 3) redressable by the court." See Fla. Audubon Soc'y v. Bentwen, 94 F.3d

658, 663 (D.C. Cir. 1996) (en banc) internal quotation marks and citations omitted); see also

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Allen, 468 U.S. at 752; Simon v.

Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976).  These allegations have not clearly

been felt "in a concrete way" by petitioner and also fail to state a "concrete and particularized

18

injury" that is clearly "actual or imminent" and "redressible" by the court.  Consequently, the

portions of petitioner's action which concern these allegations should be dismissed for failure to

state a claim.  See Fed. R. Civ. 12(b)(6).  Nor do these allegations support a writ of mandamus.

    b.  The BOP Has No Clear Duty To Act.

  Writs of Mandamus are issued in extraordinary circumstances when the officer has a clear

duty to act.  For instance, a writ of mandamus is appropriate in cases in which the relief sought

involves the exercise of a ministerial duty, Marbury v. Madison, 5 U.S. 137, 152 (1803); or a

regulatory or statutory directive, see In re Bluewater Network and Ocean Advocates, 234 F.3d

1305 (D.C. Cir. 2000).  An official action is not ministerial unless "the duty in a particular

situation is so plainly prescribed as to be free from doubt and equivalent to a positive command."

Wilbur v. United States, supra; See United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420

(1931); ICC v. New York, N.H. & H.R. Co., 287 U.S. 178, 204 (1932); United States ex rel.

Girard Trust Co. v. Helvering, supra; Will v. United States, 389 U.S. 90 (1967); Donnelly v.

Parker, 486 F.2d 402 (D.C. Cir. 1973).  When the relief sought involves the exercise of

discretion, mandamus will not lie. United States, Ex Rel. West v. Hitchcok, 19 App.D.C. 333

(D.C. Cir. 1902) (recognizing that "courts have no power to control the executive officers of the

Government in the performance of duties which involve the exercise of discretion"); Weber v.

U.S., 209 F.3d 756 (D.C. Cir. 2000)(writ of mandamus was not issued as the Office of Special

Counsel had discretion in deciding whether to conduct the investigation requested by petitioner).

  Clearly, all of the decisions made are within the exclusive discretion of the BOP as the

Executive Branch of Government has been given the authority to administer the federal prison

system;  18 U.S.C. § 4001; 18 U.S.C. § 3621; and the Attorney General has delegated this

authority to the BOP.  28 C.F.R. § 0.96.

    c.    <u>Petitioner Has An Alternative Remedy To Obtain The Relief He Seeks</u>

Lastly, the Writ of Mandamus is an extraordinary remedy which, generally, will not issue

absent an adequate remedy, either judicial or administrative.  <u>Ganem v. Heckler</u>, 746 F.2d 844,

852 (D.C. Cir. 1984) <u>citing</u>  <u>Heckler v. Ringer</u>, 466 U.S. 602, 614 (1984); <u>Allied Chemical Corp.</u>

<u>v. Daiflon, Inc</u>., 449 U.S. 33, 34 (1980); <u>United States ex rel. Girard Trust Co. v. Helvering</u>, 57

S.Ct. 855, 857 (1937); <u>Cartier v. Secretary of State</u>, 506 F.2d 191 (D.C.Cir.1974).  With respect

to those issues petitioner has not exhausted his administrative remedies, Mandamus is not

available.[4]

    1.    A Writ of Mandamus May Not Be Issued Without Meeting the
               Specific Requirements of the Prison Litigation Reform Act, 18
               <u>U.S.C. §3626(a)(1)</u>

The statute governing prospective relief[5] in the Prison Litigation Reform Act (PLRA),

codified at 18 U.S.C §3626(a)(1), puts substantial limitations on the issuance of Mandamus-type

---

[4]  Under the Prison Litigation Reform Act, a prisoner must exhaust "such administrative remedies as are available" before bringing a civil action in federal court.  <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 266 (D.C. Cir. 2001).  The BOP's administrative remedy procedure is set out at 28 C.F.R. §542.10 et seq., and provides for formal review of any complaint which relates to any aspect of the inmate's confinement.  28 C.F.R. §542.10 et seq.  Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team.  A record of that attempt is signed by the inmate and a member of the Unit Team.  If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within twenty days of the date on which the basis of the complaint occurred.  28 C.F.R. §542.14.  If the inmate is not satisfied with the Warden's response, he or she may appeal the response to the Regional Director.  If the inmate is dissatisfied with the regional response, he or she may file a national appeal with the Office of General Counsel in Washington, D.C.  28 C.F.R. §542.15.  Appeal to the Office of General Counsel is the final administrative appeal in the BOP.

[5]  The statute defines prospective relief as "all relief other than compensatory monetary damages."  18 U.S.C. §3626(g)(7).

relief.  Specifically, the Act provides, "prospective relief in any civil action with respect to

'prison conditions' (defined by the Supreme Court in <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), as

"any aspect of prison life") shall extend no further than necessary to correct the violation of the

Federal right of a particular petitioner or petitioners.  The court shall not grant or approve any

prospective relief unless the court finds that such relief is narrowly drawn, extends no further

than necessary to correct the violation of the Federal right, and is the least intrusive means

necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(b)(2).

The court must make <u>particularized findings</u> of the Federal right violated and the needs-

narrowness-intrusiveness requirements under the Act.  This mandatory requirement must be

more than mimicking the language of the statute, and is discussed in <u>Cason v. Seckinger</u>, 231

F.3d 777 (11th Cir. 2000); <u>see also</u>, <u>Johnson v. Breeden</u>, 280 F.3d 1308 (11th Cir. 2002).

The statute further states, "[t]he court shall give substantial weight to any adverse impact

on public safety or the operation of a criminal justice system caused by the relief."  Any order

that this court might issue regarding Petitioner's claims implicates this portion of the PLRA, in

that it will have an adverse impact on the BOP's authority to manage its inmate population and

properly allocate the available resources, as well as the operation of the federal prison system.

The Court in <u>Thompson v. Gomez</u>, 993 F.Supp. 749, 754-5 (N.D.Cal.1997), <u>rev'd on</u>

<u>other grounds</u> in <u>Gilmore v. People of the State of California</u>, 220 F.3d 987, 1005 (9th Cir. 2002)

stated:

> The PLRA's prospective relief provisions
> unambiguously confine the power of federal courts
> to circumstances where prospective relief is
> necessary to correct specific violations of federal
> rights, and then to use only the least intrusive means

21

necessary to correct such federal violations. For purposes of the PLRA's prospective relief provisions, 'federal rights' are limited to those rights created by federal law.

The legislative reports on the bill reflect these Congressional intentions:

'By requiring courts to grant or approve relief constituting the least intrusive means by curing an actual violation of a federal right, the provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions. The provision limits remedies to those necessary to remedy the proven violation of federal rights. The dictates of the provision are not a departure from current jurisprudence concerning injunctive relief [which provides that] ... injunctive relief must be no broader than necessary to remedy the constitutional violation.' H.R.Rep. No. 21, 104th Cong., 1st Sess., pt. 2, p. 34 (1995) (citations and quotations omitted).'

On appeal in the same case in the Ninth Circuit, in Gilmore, supra, at 1005, that court

observed:

As the Supreme Court long ago made clear in the school desegregation cases, although the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies ... it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults.... As with any equity case, the nature of the violation determines the scope of the remedy. Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15-16(1971) (emphasis added) (approving remedies necessary to effectuate desegregation). Thus where a court seeks to correct a constitutional violation established in the course of litigation, the court's exercise of

22

> equitable discretion must heel close to the identified
> violation and respect 'the interests of state and local
> authorities in managing their own affairs, consistent
> with the Constitution.' Milliken v. Bradley, 433 U.S.
> 267, 281 (1977) ("Milliken II ") (upholding
> imposition of remedial education program to
> effectuate desegregation decree).

There are no federal rights upon which to base any writ of mandamus in this case, as more fully explained above, and even if there were, the adverse impact upon the provision of health care to prisoners and the operation of the federal criminal justice system outweighs any equities in favor of petitioner.  Thus, petitioner has failed to meet his burden.

2.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

The Court should dismiss petitioner's request for injunctive relief.   As the District of Columbia Circuit has explained, in considering a petitioner's request for a preliminary injunction a court must weigh four factors: (1) whether the petitioner has a substantial likelihood of success on the merits; (2) whether the petitioner would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 303 (D.C. Cir. 2001).   "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted).  "TRO is an extraordinary remedy and should not be granted lightly." Id. at 68.  Similarly, a preliminary injunction is an "'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted).

23

Since Petitioner has failed to demonstrate that he is entitled to mandamus relief, he is also not entitled to an injunction. For example, as shown above, Petitioner is not likely to succeed on the merits and therefore cannot demonstrate that he is entitled to injunctive relief.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this petition for mandamus and injunctive relief be denied and the complaint be dismissed with prejudice.

February 8, 2008                    Respectfully submitted,

   /s/ _____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

   /s/ _____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

   /s/ _____
KENNETH ADEBONOJO
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7157

Ann H. Zgrodnik
Senior Counsel
Litigation Branch
Office of General Counsel
Bureau of Prisons

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Marc P. Hall, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-1149 |
| | ) | |
| | ) | |
| United States of America, et al., | ) | |
| Respondents. | ) | |
| _____ | ) | |

## DECLARATION OF BRUCE PLUMLEY

I, Bruce Plumley, hereby make the following declaration:

1.  I am an Administrative Remedy Specialist for the Federal Bureau of Prisons (BOP) in Washington, D.C., and have been employed in this capacity with the BOP since August 2, 2005. I have been employed with the BOP since March 8, 1992.

2.  The Bureau of Prisons Administrative Remedy Program is outlined in 28 C.F.R. §542.10 et seq., and provides formal review of any complaint which relates to any aspect of the inmate's confinement.  Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team.  A record of that attempt is signed by the inmate and a member of the Unit Team.  If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within twenty days of the date on which the basis of the complaint occurred.  28 C.F.R. §542.13.  If the inmate is not satisfied with the Warden's response, he or she may appeal the response to the Regional Director.  If the inmate is dissatisfied with the regional response, he or she may file a national appeal with the Office of General Counsel in Washington, D.C.  28 C.F.R. §542.14.  Once a response is issued by this office, the matter (or remedy cycle) is considered exhausted and closed, as an Appeal to the Office of General Counsel is the final step administrative appeal process in the Bureau of Prisons.

3.  As an Administrative Remedy Specialist, I have access to the BOP database referred to as SENTRY.  All administrative remedy requests and appeals filed by Bureau of Prisons' inmates are logged and maintained in an index in SENTRY.  Each request or appeal is also catalogued by subject matter.

4.  I have reviewed the administrative remedy requests and appeals filed by the Petitioner Marc P. Hall, Register Number 11691-058.

5.  According to the index in SENTRY, petitioner has submitted 601 administrative remedy requests and appeals since his incarceration in 1997.  According to the petition, petitioner raises numerous issues regarding staff assigned to USP Marion, USP Lewisburg, USP Allenwood, and USP Victorville.  Petitioner was first confined on April 19, 2005, to USP Marion .  Since then, and as of this date, petitioner has filed 301 administrative remedy requests and appeals.  Of these, 175 were rejected for technical flaws.  Examples of such flaws, to name a few, are submitting appeals to the wrong level, untimeliness, failing to include copies of responses from lower levels, and illegibility.  Since April 19, 2005, Plaintiff has appealed 28 Requests through the appeal process and to exhaustion.  Of these 28 administrative remedy appeals, however, only 22 cycles, based on the abstracts of the index and review of the appeal files, appear to relate to the complaint.  All of these administrative remedies originated solely from USP Marion and USP Lewisburg.

6.  In administrative remedy cycle 383005, petitioner claimed that while housed in USP Marion staff impinged his access to the courts by not providing him with postage.  Appeal of this issue received a response from the Office of General Counsel.  Therefore, petitioner has exhausted his administrative remedies with regard to staff at USP Marion impeding his access to court by not providing him with postage.

7.  In the petition, petitioner claims staff assigned to USP Marion, USP Lewisburg, and USP Allenwood subjected him to numerous fraudulent accounting practices by double charging for postage, overcharging for copies, and encumbering his Trust Fund Account to collect debts illegally.  These issues were raised and considered against USP Marion in administrative remedy cycles 407766, 410823, 413294.  It was also raised against USP Lewisburg in administrative remedy cycle 431920.  These four appeals received a response from the Office of General Counsel.  Thus, this issue is considered exhausted for USP Marion and USP Lewisburg.  Petitioner did not exhaust this issue while incarcerated at USP Allenwood or any other institution.

8.  In the petition, petitioner claims staff repeatedly denied medical care and treatment for multiple medical issues during his incarceration at USP Marion, USP Lewisburg, and USP Allenwood and, as a result, suffers deprivation of appropriate medical treatment and care for various medical concerns.  Administrative remedy cycles 384509 and 407558, and 419312 were initiated and received responses regarding the alleged denial of care for the time he was assigned to USP Marion.  Administrative remedy cycle 431998 was initiated and pertained to this issue while incarcerated at USP Lewisburg.  All four of these appeals received a response from the Office of General Counsel and are considered exhausted.  Petitioner has not exhausted this issue while incarcerated USP Allenwood or with any other institution.

9.  In the petition, petitioner claims staff repeatedly denied his rights to privacy regarding his physical health concerns, during his incarceration at USP Marion, USP Lewisburg, and USP Allenwood.  He contends the sick call and triage procedures did not afford him privacy.  These issues were considered and received responses from the Office of General Counsel in administrative remedy cycles 402063 and 414743 for the period in which he was incarcerated at USP Marion.  In addition, petitioner claimed staff denied his right to privacy regarding his

mental state. This issue was raised against staff assigned to USP Marion and considered in administrative remedy cycle 420175. In administrative remedy cycle 432482, petitioner claims staff at USP Lewisburg confined him to the Special Housing Unit because of his mental health issues and openly discussed his condition within earshot of others. All four of these appeals received a response from the Office of General Counsel. Thus, petitioner exhausted the above matters at USP Marion and USP Lewisburg. However, petitioner has not exhausted these issues at USP Allenwood or USP Victorville.

10.   In administrative remedy cycle  432427, petitioner claimed to be mentally ill and alleged psychology staff assigned to USP Lewisburg failed to conduct a proper intake screening. He contends they falsified records and also failed to obtain a diagnosis of his mental illness from the Connecticut Department of Corrections. Petitioner exhausted this issue for USP Lewisburg as he received a response from the Office of General Counsel. However, petitioner has not exhausted this issue at USP Marion, USP Allenwood, and USP Victorville.

11.   In the petition, petitioner claimed staff at USP Marion destroyed legal property and exhibits. He also contended USP Marion staff impeded his access to the grievance process. This complaint was addressed in administrative remedy cycle 420183. He also claimed that USP Lewisburg staff destroyed and intermixed his legal property and exhibits in remedy cycle 434130. Both appeals were considered and received a response from the Office of General Counsel. Therefore, these issues are considered exhausted for USP Marion and USP Lewisburg.

12.   Petitioner alleged in administrative remedy cycle 434139 that staff assigned to USP Lewisburg violated his rights by confining him in the Special Housing Unit with ambulatory restraints and without a mattress or bedding. This complaint was considered, and received a response from the Office of General Counsel. He also claimed, in administrative remedy cycle 436479, that staff assigned to USP Lewisburg withheld food as punishment when he was confined in the Special Housing Unit. This matter was considered and received a response from this office. Both issues are considered exhausted as they pertain to USP Lewisburg. However, petitioner has not exhausted these issues at any other institution.

13.   In the petition, petitioner alleged staff assaulted him, on August 24, 2007, at USP Victorville while he was confined to the Special Housing Unit (SHU). He claims the handheld camera was turned off during the assault, and no adequate security cameras were mounted in the general housing or common area of SHU and staff destroyed any evidence which would implicate staff. However, petitioner has not exhausted his administrative remedies with respect to an alleged assault at USP Victorville on August 24, 2007. In administrative remedy cycle 429530, though, petitioner alleged staff assaulted him at USP Lewisburg on September 21, 2006, and in administrative remedy cycle 433517 petitioner alleged that he was also assaulted at USP Lewisburg on October 25, 2006. These two appeals received responses from the Office of General Counsel and are considered exhausted for USP Lewisburg. Petitioner does not appear to raise these alleged assaults as issues in his petition.

14.   Petitioner alleged in administrative remedy cycles 390420 and 436371, that while he was confined in the Special Housing Unit of USP Marion and USP Lewisburg staff subjected

him to a harmful environment by exposing him to second-hand smoke and permitting other inmates to burn paper. Appeals of these claims were considered and received responses from the Office of General Counsel and are therefore considered exhausted for USP Marion and USP Lewisburg.

15. Petitioner raised numerous allegations of staff misconduct in his complaint, all of which he contend violated his constitutional rights. However, based on my review of the index in SENTRY and the administrative remedy cycles identified herein, petitioner has not exhausted any additional complaints or concerns he attributes to USP Marion, USP Lewisburg, USP Allenwood, or USP Victorville.

I declare the foregoing is true and correct to the best of my knowledge and belief, and given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this _7th_ day February, 2008.

_____
Bruce Plumley
Administrative Remedy Specialist
Office of General Counsel